# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT L. GANOE, SR. | : |
| | : CIVIL NO.: 1:20-CV-663-YK |
| Plaintiff, | : |
| | : JUDGE YVETTE KANE |
| v. | : |
| | : [ELECTRONICALLY FILED] |
| MARK D. ESPER, | : |
| | : |
| Defendant. | : |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Date: June 2, 2021.

**BRUCE D. BRANDLER**
Acting United States Attorney

/s/ *Harlan W. Glasser*
Harlan W. Glasser (PA 312148)
Melissa A. Swauger (PA 82382)
Assistant U.S. Attorneys
228 Walnut Street, Suite 220
Harrisburg, PA 17101
(717) 221-4530
harlan.glasser@usdoj.gov
Melissa.swauger@usdoj.gov

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES........................................................................iv

I.       INTRODUCTION ................................................................................1

II.      BACKGROUND ..................................................................................3

    A.  Plaintiff seeks damages for emotional and mental harm
        caused by Defendant's alleged disability discrimination.........................3

    B.  Plaintiff affirmed he seeks damages for "severe emotional
        distress" in his Initial Disclosures ..................................................3

    C.  Defendant requested information relevant to Plaintiff's
        alleged disability and emotional distress ..........................................3

    D.  Plaintiff's initial discovery responses affirmed he seeks
        Damages for severe emotional distress and invited Defendant
        to obtain his medical records.........................................................4

    E.  Plaintiff's revised discovery responses again affirmed he seeks
        damages for severe emotional distress, and he committed to
        providing authorizations for all requested medical records.....................5

    F.  Plaintiff again commits to producing the requested authorizations..........6

    G.  Discovery Conference with the Court due to Plaintiff's Refusal to
        Produce Medical Records or Execute Authorizations .............................6

    H.  Plaintiff refused to execute the authorizations despite the Court's
        directive and counsel's agreement during the conference .......................7

    I.  The Court issued an Order reflecting the outcome of the conference
        and ordered Plaintiff to "immediately execute and provide to
        counsel for defendant" the requested authorizations ..............................8

    J.  Despite Plaintiff's request for revised authorizations, he
        subsequently refused to Comply with the Court's Order.........................8

i

III.   QUESTIONS PRESENTED ....................................................................9

IV.   ARGUMENT ............................................................................................9

   A.   Plaintiff's Motion should be denied because this Court
has already – and correctly – concluded Plaintiff's emotional
and mental health and substance abuse conditions are relevant
and discoverable .....................................................................................10

     1.   As this Court has already directed, Plaintiff's Medical
Records from "Medical Providers who provided care
relating to his emotional distress damages, including any
providers who treated him for mental health conditions
and/or substance abuse issues," are relevant ...................................10

     2.   As this Court has already acknowledged, the requested
medical records are not confidential and are not
protected by Pennsylvania law...........................................................11

     3.   Even if Plaintiff had an expectation of privacy, he waived
any applicable privilege because he placed his emotional
and mental health at issue in this lawsuit...........................................12

     4.   Plaintiff offers nothing in his Motion to overcome
Defendant's entitlement to the records the Court
ordered to be produced......................................................................14

     5.   Counsel's representation that no records exist do not
render the requested records irrelevant or warrant protection
from the Court's Order........................................................................16

   B.   Plaintiff's Motion for Protective Order should be deemed
withdrawn due to Plaintiff's procedural violation causing
additional delay .......................................................................................18

C.  Plaintiff's Motion should be denied because he repeatedly
    waived any objection to producing the Medical Records,
    as initially requested by Defendant ......................................................18

V.    CONCLUSION ...............................................................................................20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*Commonwealth v. Segarra*,
   228 A.3d 943 (Pa. Super. 2020)..................................................................................15

*Coregis Ins. v. Baratta & Fenerty*,
   187 F.R.D. 528 (E.D. Pa. 1999)..................................................................................18

*Dietz & Watson v. Liberty Mut. Ins.*,
   No. 14-cv-4082, 2015 WL 2069280 (E.D. Pa. May 5, 2015) ......................................18

*Frazier v. Shinseki*,
   No. 12-cv-1035, 2014 WL 1618448 (W.D. Pa. Apr. 22, 2014) ...................................13

*Gormley v. Edgar*,
   995 A.2d 1197 (Pa. Super. 2010)................................................................................11

*Jaffee v. Redmond*,
   518 U.S. 1 (1996)........................................................................................................12

*Katz v. Nat'l Board of Med. Exam'rs*,
   No. 15-cv-1187, 2016 WL 2744823 (M.D. Pa. May 10, 2016) ...................................12

*O'Boyle v. Jensen*
   150 F.R.D. 519 (M.D. Pa. 1993)............................................................................15, 16

*Payne v. City of Phila.*,
   No. 03-cv-3919, 2004 WL 1012489 (E.D. Pa. May 5, 2004) .................................10, 13

*Pritchard v. Dow Agro,*
   *Sci.*, 263 F.R.D. 277 (W.D. Pa. 2009) .........................................................................18

*Rel. McAllister v. Royal Caribbean Cruises*,
   No. 02-cv-2393, 2005 WL 151925 (E.D. Pa. Jan. 20, 2005) ......................................13

*Sanchez v. U.S. Airways*,
   202 F.R.D. 131 (E.D. Pa. Mar. 29, 2001)....................................................................13

*Sarko v. Penn-Del Directory*,
   170 F.R.D. 127 (E.D. Pa. 1997)..................................................................................12

*Shenker v. Sportelli*,
   83 F.R.D. 365 (E.D. Pa. 1979)....................................................................................18

*Smith v. Cent. Dauphin Sch. Dist.*,
   No. 05-cv-1003, 2007 WL 188569 (M.D. Pa. Jan. 22, 2007) .................................10, 13

*Thorne v. Universal Props.*,
   No. 86-cv-0333, 1987 WL 7683 ..................................................................................14

*Topol v. Trs. of Univ. of Pa.*,
   160 F.R.D. 476 (E.D. Pa. 1995)..................................................................................13

iv

## <u>TABLE OF AUTHORITIES, cont.</u>

Page(s)

CASES

*Trask v. Olin*
   298 F.R.D. 244 (W.D. Pa. 2014) ....................................................................15
*Waggaman v. Villanova Univ.*,
   No. 04-cv-4447, 2006 WL 2045486 (E.D. Pa. July 14, 2006) .......................13

RULES

F.R.C.P. 26(b)(1).............................................................................................10
F.R.C.P. 34(b)(2)(B) ........................................................................................18

OTHER AUTHORITIES

L.R. 7.5............................................................................................................18

## I. __INTRODUCTION__

Plaintiff's most recent attempt to avoid his discovery obligations comes in the form of a Motion that – oddly – seeks protection from ***this Court's 5/7/21 Order***, (Doc. 21). This Order followed an extensive discovery conference and directed Plaintiff "immediately" to produce executed authorizations for the release of his medical records related to both his alleged disabling medical conditions and damages. (Doc. 21.) ***To date, he has produced nothing***.

Plaintiff's continued refusal to produce these authorizations is an improper attempt to establish a damages claim on his own terms, thereby preventing Defendant from gathering the evidence necessary to present a robust defense. This Court's 5/7/21 Order was proper, and Plaintiff's ongoing tactics are inexcusable.

*First*, as this Court already determined, medical records from providers who both treated Plaintiff for the allegedly disabling physical medical conditions and evaluated or treated Plaintiff for any emotional, mental health and substance abuse conditions are relevant because Defendant disputes both that Plaintiff is disabled and that he has suffered the "extreme emotional distress" he claims. [*See infra* Part IV.A.1.]

*Second*, as this Court has already acknowledged by directing Plaintiff to execute the authorizations, Plaintiff has not – and cannot – establish any privilege to prevent disclosure because Plaintiff himself has represented he has not received treatment within the scope of protection. [*See infra* Part IV.A.2.]

*Third*, as this Court also has acknowledged already, Plaintiff cannot hide behind a claim of privilege when he placed these conditions directly at issue, and, therefore, he has waived any expectation of privacy that he could have in these records. [*See infra* Part IV.A.3.]

Plaintiff's arguments in his Motion are the same as those raised before and addressed during the 5/5/21 conference, (*see* Doc. 14), and are as meritless now as they were then. Indeed, the two cases Plaintiff cites actually further support the propriety of the Order entered by the Court, [*see infra* Part IV.A.4], and his insistence that no mental health records exist is immaterial to his obligations to execute and produce the authorizations, [*see infra* Part IV.A.5].

But this Court need not even reach the merits of Plaintiff's argument. Plaintiff's Motion should be deemed withdrawn as in violation of Local Rule, [*see infra* Part IV.B.], and, in any event, Plaintiff has waived any objection to Defendant's receipt of the records the Court ordered him to produce by failing to object – and promising the authorizations would be provided, [*see infra* Part IV.C.]

For all – or any – of these reasons, this Court should see through Plaintiff's conduct, deny his Motion, and again direct him to execute and provide immediately those same authorizations that it had ordered him to provide nearly a month ago so Defendant can obtain the records it has been rightfully seeking since November.

II.   **BACKGROUND**[1]

   A. <u>Plaintiff seeks damages for emotional and mental harm caused by Defendant's alleged disability discrimination</u>.

Plaintiff alleges, *inter alia*, Defendant violated the Rehabilitation Act by harassing him and terminating his employment due to his disability.  (Doc. 1, Count III.)   In his Complaint, he claims he "suffered, and continues to suffer emotional and mental harm." (Doc. 1, ¶ 35.)  Defendant disputes, *inter alia*, both that Plaintiff is disabled as defined by the Rehabilitation Act, (Doc. 4, Aff. Def., ¶ 8), and that Plaintiff suffered any emotional or mental harm, (Doc. 4, ¶ 35).

   B. <u>Plaintiff affirmed he seeks damages for "severe emotional distress" in his Initial Disclosures</u>.

In his initial disclosures, Plaintiff identified an "indeterminate" amount of damages to compensate him for "humiliation and embarrassment resulting in severe emotional distress."  [<u>Pl. Initial Disclosures</u>, ¶ (C)(3), attached as Exhibit A.]

   C. <u>Defendant requested information relevant to Plaintiff's alleged disability and emotional distress</u>.

Shortly thereafter, Defendant diligently engaged in discovery, serving a first set of Interrogatories and Requests for Production of Documents on 11/25/20.  Included in the propounded discovery were requests for information pertaining to Plaintiff's "indeterminate" amount of damages for emotional distress and alleged disability, and

---

[1] Plaintiff's truncated version of the facts misstates – and certainly does not capture – the full relevant issues or procedural posture of this matter.

requests that he (a) identify each medical provider with whom he has sought treatment during and after his employment, (b) produce "all medical records of Plaintiff from April 9, 2009 to the present," and (c) "execute the attached Authorization for the Release of Medical Records for each provider." [*See* <u>Pl. Resp. to Def. Interrog.</u>, ¶ 17, dated 2/8/21, attached as Exhibit B; <u>Pl. Resp. to Def. Req. for Prod.</u>, ¶ 9, dated 2/8/21 attached as Exhibit C.]   Defendant provided a blank authorization for Plaintiff's use.   [*See* <u>Letter</u>, dated 11/25/20, attached as Exhibit D; *see also* Ex. C.]

> D. <u>Plaintiff's initial discovery responses affirmed he seeks damages for severe emotional distress and invited Defendant to obtain his medical records</u>.

Plaintiff initially responded on 2/8/21.   To Defendant's damages interrogatory, Plaintiff offered the following response:

> Compensatory damages: Plaintiff will seek the maximum compensatory damages available to him in claims like his, ***including for the severe emotional distress that Defendant's acts and/or omissions have caused to Plaintiff***.

[<u>Ex. B</u>, ¶ 17.]   Plaintiff responded without objection, in pertinent part, as follows to Defendant's request for his medical records:

> Plaintiff is not currently in possession of any medical records, but the same ***may be obtained by health care providers*** listed on the list at Attachment E hereto.

[<u>Ex. C</u>, ¶ 9.]   Plaintiff did not identify any medical providers on Attachment E or elsewhere, and did not execute the provided authorizations.

E.  <u>Plaintiff's revised discovery responses again affirmed he seeks damages for</u>
<u>severe emotional distress, and he committed to providing authorizations for all</u>
<u>requested medical records.</u>

On 2/10/21, Defendant wrote Plaintiff in an attempt to resolve several discovery disputes, which included Plaintiff's failures to identify his medical providers and execute the requested authorizations (both necessary to obtain the records, as Plaintiff invited Defendant to do).  (Doc. 13-1, p. 5 ("Request No. 9").)  Plaintiff served revised responses. [<u>Pl. Rev. Resp. to Def. Interrog</u>, ¶ 17, dated 3/2/21, attached as Exhibit E; <u>Pl. Rev. Resp.</u> <u>to Def. Req. for Prod.</u>, ¶ 9, dated 3/16/21, attached as Exhibit F.] Relevant here, Plaintiff's revised response to Defendant's damages interrogatory provided, in pertinent part, as follows:

> Plaintiff has ***suffered extreme emotional distress*** as a result of his mistreatment and hostility resulting from his numerous efforts to report rampant waste, fraud, abuse, and mismanagement to any and all of the individuals and/or agencies identified in the documents set forth in the Interrogatory 3 folder.

[Ex. E, ¶ 17.]  Plaintiff's revised response to Defendant's request for medical records provided, without objection, as follows:

> See Attachments B and C, at RPD Attachments on the companion thumb drive to these responses.  If a signed authorization is still requested after review thereof, ***a signed Authorization will be provided as soon as possible for any*** ***remaining medical records not within Plaintiff's possession or custody.***

[Ex. F, ¶ 9.[2]]   The attachments included only a one-page "message" from Plaintiff's primary care physician, dated 4/26/15, and a three-page benefits rating from the Department of Veterans Affairs, dated 4/6/12, which identified medical records dating back to 1981.

F.  Plaintiff again commits to producing the requested authorizations.

On 4/2/21, defense counsel contacted Plaintiff's counsel to request the authorizations again.   Plaintiff counsel's office responded that "the Medical Records Release has been requested. ***We will provide that to you as soon as it is received***."  [Email, dated 4/2/21 (11:15 am), attached as Exhibit G.]

Despite Plaintiff's promises, those authorizations never came.

G.  Discovery Conference with the Court due to Plaintiff's Refusal to Produce Medical Records or Execute Authorizations.

After several failed efforts to obtain the promised authorizations, Defendant submitted a letter to the Court on 4/12/21, with copy to counsel, advising of a discovery dispute related to, *inter alia*, Plaintiff's medical records. (Doc. 13.)  Plaintiff responded on 4/20/21.  (Doc. 14; *see also* Doc. 12.)  The Court held a conference with the Parties on 5/5/21, during which it received argument regarding the medical records request. (*See* Doc. 21.)

---

[2] Plaintiff submitted a third version of his responses to Defendant's Request for Production of Documents, dated 3/26/21, to the Court in support of his Motion.  (Doc. 24-3.)  That version also represented additional medical records would be provided "pending a signed authorization."  (*Id.* at p. 4 of 6.)

During argument, this Court rejected Plaintiff's position that "he alone will attest to the mental anguish occasioned by his mistreatment by Defendant," (*see* Doc. 14), and explained that medical records related to Plaintiff's mental health and substance abuse treatment were relevant and discoverable because Plaintiff placed his emotional and mental health conditions at issue by claiming he suffered "extreme emotional distress" as a result of Defendant's conduct.  The Court also explained that Defendant was entitled to medical records from providers who treated Plaintiff for the medical conditions he claimed constitute disabilities.  As the Parties expressed agreement with the Court's direction, neither immediately requested an Order memorializing the Court's direction with respect to the medical records.[3]

H. <u>Plaintiff refused to execute the authorizations despite the Court's directive and counsel's agreement during the conference.</u>

The next morning, defense counsel contacted Plaintiff's counsel with another copy of the blank authorizations and instruction that Plaintiff execute authorizations for only the medical providers who provided treatment for his emotional distress damages (which may include drug & alcohol records) and medical conditions he alleges are disabilities.  [<u>Letter</u>, dated 5/6/21, p. 6 (Email, dated 5/6/21 (8:43 am), attached as Exhibit H.]  Plaintiff refused.  Accordingly, defense counsel wrote to the Court, with copy to Plaintiff's counsel,

---

[3] At the conclusion of the conference, Plaintiff's counsel requested the Court issue an order related to the tax records to facilitate his client's production of the same.  The Court issued an order on that issue only. (Doc. 20.)

requesting "that the Court issue an Order reflecting the outcome of [the 5/5/21] conference or authorizing the filing of a motion to compel."  [Ex. H.]

I.   The Court issued an Order reflecting the outcome of the conference and ordered Plaintiff to "immediately execute and provide to counsel for defendant" the requested authorizations.

On 5/7/21, the Court issued the following Order:

> **AND NOW**, on this 7th day of May 2021, in accordance with the status conference held on May 5, 2021, and based on the parties' representations therein, **IT IS ORDERED THAT** Plaintiff Robert L. Ganoe ("Plaintiff") shall immediately execute and provide to counsel for Defendant authorizations for the release of Plaintiff's medical records—for the period from April 9, 2016, until present—from the following providers: (1) medical providers who provided care relating to his emotional distress damages, including any providers who treated him for mental health conditions and/or substance abuse issues; and (2) medical providers who treated Plaintiff for his alleged disabilities.

(Doc. 21.)

J.   Despite Plaintiff's request for revised authorizations, he subsequently refused to Comply with the Court's Order.

Following the Court's 5/7/21 Order, Plaintiff's counsel requested defense counsel to "revise the medical records authorization to reflect the time period for disclosure contained in Judge Kane's second, 5.7.21 Order."  (Doc. 23-1, p. 3 (Email, dated 5/7/21 (10:02 am)).) Defense counsel did so.  (*Id.* (Email, dated 5/7/21 (10:53 am)).) Still having not received anything from Plaintiff a week later, Defense counsel inquired as to the status of the authorizations.  (*Id.* at p. 2 (Email, dated 5/14/21 (9:50 am)).)  Plaintiff thereafter responded with redacted tax records but not with any medical record authorizations.  Accordingly,

defense counsel again requested Plaintiff comply with the Court's 5/7/21 Order.  (*Id.* at p.

1 (Email, dated 5/14/21 (12:59 pm)).)

Plaintiff still has not executed the authorizations.  (*See* Doc. 23.)  Instead, he filed

this Motion, (Doc. 22), and a supporting brief nine days later, (Doc. 24).

## III.   QUESTIONS PRESENTED

A. Whether Plaintiff's Motion for Protective Order should be denied when this Court has already correctly ruled that Plaintiff's medical records, as ordered, are relevant and discoverable?

B. Whether Plaintiff's Motion for Protective Order should be deemed withdrawn for failure to comply with Local Rule 7.5?

C. Whether Plaintiff's Motion for Protective Order should be denied when he waived any objection to producing his medical records, as requested?

[*Suggested answer to all questions in the affirmative.*]

## IV.   ARGUMENT

Initially, nothing in Plaintiff's Motion addresses this Court's Order as it relates to

his non-mental health or non-substance abuse records, or excuses his ongoing refusal to

execute authorizations to those providers – whom he still has not even identified.  This

Court therefore should, at a minimum, direct Plaintiff again to "immediately execute and

provide to counsel for Defendant authorization for the release of Plaintiff's medical records

– for the period from April 9, 2016 until present from … (2) medical providers who treated

Plaintiff for his alleged disabilities."  (Doc. 21.)

A. <u>Plaintiff's Motion should be denied because this Court has already – and correctly – concluded Plaintiff's emotional and mental health and substance abuse conditions are relevant and discoverable.</u>

1. *As this Court has already directed, Plaintiff's Medical Records from "Medical Providers who provided care relating to his emotional distress damages, including any providers who treated him for mental health conditions and/or substance abuse issues," are relevant.*

As addressed during the 5/5/21 conference and reflected in this Court's 5/7/21 Order, Plaintiff has placed his medical mental health condition at issue because he claims that, as a result of Defendant's allegedly discriminatory and retaliatory conduct, he has suffered "extreme" and "severe" emotional distress.  Contrary to Plaintiff's representation in his briefing, the relevancy of his past and current mental health conditions are not linked only to a "lone averment[ ] in one count of his complaint," but due to the claims he asserted in this action, placed at issue through his complaint, (Doc. 1, ¶ 35), and reiterated by his initial disclosures, [Ex. A], initial discovery responses, [Ex. B, ¶ 17], and revised discovery responses, [Ex. E, ¶ 17].  This "severe" and "extreme" emotional distress – for which Plaintiff bears the burden of causation and for which he is seeking monetary damages – have squarely placed his mental health condition at issue and rendered it relevant to this case.  F.R.C.P. 26(b)(1); *see also, e.g.*, *Payne v. City of Phila.*, No. 03-cv-3919, 2004 WL 1012489, *2 (E.D. Pa. May 5, 2004) ("When a plaintiff claims damages resulting from emotional distress, the opposing party is entitled to the plaintiff's mental health records."); *Smith v. Cent. Dauphin Sch. Dist.*, No. 05-cv-1003, 2007 WL 188569, *1 (M.D. Pa. Jan.

22, 2007) (directing the plaintiff to execute authorizations for the release of records related to mental health treatment to enable the defendants "[t]o prepare their defense on emotional injury").

2. *As this Court has already acknowledged, the requested medical records are not confidential and are not protected by Pennsylvania law.*

With the Court having already ruled that the requested records are relevant, Plaintiff relies on Pennsylvania statutes to argue the records are beyond the scope of discovery. Plaintiff raised this issue before.  (*See* Doc. 14, p. 2, ¶ 3).  This Court rejected it then, (*see generally* Doc. 21), and should reject it again now.

Plaintiff has not – and cannot – demonstrate either statutory confidentiality protection he cites applies.  The scope of the Pennsylvania Mental Health Procedures Act is narrow and only "establishes rights and procedures for all ***involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons***." 50 P.S. § 7103.[4]  Plaintiff, who has represented through his counsel that he has "***never been treated for any mental health issue***," (Doc. 24-2, p. 2), admittedly falls outside the scope of the MHPA.   Therefore, the confidentiality provisions cannot and do not apply.  *See, e.g.*, *Gormley v. Edgar*, 995 A.2d 1197, 1203 (Pa. Super. 2010) (holding MHPA does not apply to records from voluntary mental health care provided during an outpatient emergency room visit).

---

[4] Section 7103.1 defines both "inpatient treatment" and "Facility," which would exclude mental health evaluations or care that would be provided, for example, during an outpatient primary care encounter.

Similarly, the Pennsylvania Drug and Alcohol Abuse Control Act only requires that certain medical records be generated "***as part of the diagnosis, classification and treatment of a patient pursuant to this act***." 71 P.S. § 1690.108(a). The PDAACA extends limited confidentiality provisions only to those records "***prepared or obtained pursuant to this act***." 71 P.S. § 1690.108(b). Plaintiff, who has represented through counsel that he has "***never been in drug & alcohol treatment***," (Doc. 24-2, p. 2), admittedly falls outside the scope of the PDAACA. Therefore, the confidentiality provisions cannot and do not apply.

> 3. *Even if Plaintiff had an expectation of privacy, he waived any applicable privilege because he placed his emotional and mental health at issue in this lawsuit.*

But even if any privilege or expectation of privacy – whether statutorily created or otherwise – applied to the information and records pertaining to his mental health conditions, which it does not, Plaintiff has waived it. *Jaffee v. Redmond*, 518 U.S. 1, 15 n.14 (1996) ("[T]he patient may of course waive the protection."); *Sarko v. Penn-Del Directory*, 170 F.R.D. 127, 129-31 (E.D. Pa. 1997) (holding that the plaintiff alleging her termination violated the ADA waived psychotherapist/patient privilege by placing her mental condition at issue); *Katz v. Nat'l Board of Med. Exam'rs*, No. 15-cv-1187, 2016 WL 2744823, *4 (M.D. Pa. May 10, 2016) (explaining the plaintiff's medical and psychiatric records are "clearly relevant" to his claims for compensatory damages).

And this waiver applies where, as here, the mental health conditions are relevant to the only the damages a plaintiff seeks. *See, e.g.*, *Frazier v. Shinseki*, No. 12-cv-1035, 2014 WL 1618448, *1 (W.D. Pa. Apr. 22, 2014) ("[D]istrict courts in this Circuit have 'consistently espoused a broad view of waiver and held that a request for damages based on emotional distress, ***without more***, places the plaintiff's mental state at issue and waives the privilege." (emphasis in original)); *Waggaman v. Villanova Univ.*, No. 04-cv-4447, 2006 WL 2045486, *2 (E.D. Pa. July 14, 2006) (explaining, in an employment discrimination case, that "our cases do not suggest that anything more than a request for damages based on emotional distress is required to waive the privilege."); *Smith*, 2007 WL 188569 at *1 (directing the plaintiff to execute authorizations for the release of records related to mental health treatment to enable the defendants "[t]o prepare their defense on emotional injury"); *Payne*, 2004 WL 1012489 at *2 ("When a plaintiff claims damages resulting from emotional distress, the opposing party is entitled to the plaintiff's mental health records."); *McAllister ex. Rel. McAllister v. Royal Caribbean Cruises*, No. 02-cv-2393, 2005 WL 151925, *1 (E.D. Pa. Jan. 20, 2005) ("[W]hen a party places his or her mental status at issue, such as by claiming damages resulting from emotional distress, that privilege is waived."); *Topol v. Trs. of Univ. of Pa.*, 160 F.R.D. 476, 477 (E.D. Pa. 1995) (holding the plaintiff placed her mental state in issue and waived any applicable privilege by seeking damages for mental and emotional suffering); *Sanchez v. U.S. Airways*, 202 F.R.D. 131, 135 (E.D. Pa. Mar. 29, 2001) (concluding the plaintiff waived any privilege

related to his mental health by putting his emotional state at issue, and holding that the mental health records were relevant because they may disclose whether the plaintiff actually suffered emotional distress from the termination, or whether he sought treatment for unrelated stress, the existence of which would mitigate the emotional distress claim).

Tellingly, despite his ongoing resistance, which now violates this Court's order, Plaintiff has not withdrawn his claim for noneconomic damages.  To the contrary, he has argued that "he alone will attest to the mental anguish occasioned by his mistreatment by Defendant." (Doc. 14, p. 2.)  But Plaintiff does not have the right to decide which evidence Defendant and the Court can consider. *See Thorne v. Universal Props.*, No. 86-cv-0333, 1987 WL 7683, * (E.D. Pa. Mar. 10, 1987) ("If a plaintiff seeks damages for alleged emotional or psychological injuries, the defendant's case ought not to be limited by the plaintiff's decision not to introduce available medical or psychological testimony that bears directly on the truth of the claim.").

4.  *Plaintiff offers nothing in his Motion to overcome Defendant's entitlement to the records the Court ordered to be produced.*

Given the wealth of cases contrary to Plaintiff's "privilege" position, it is unsurprising that the only two cases he cites do not require a different result; in fact, they both support Defendant's entitlement to Plaintiff's complete medical records, including those for Plaintiff's mental health and substance abuse treatment.  In *Trask v. Olin*, the court denied reconsideration of an order directing that the defendant respond to document requests that it had contended would result in production of inadmissible evidence,

14

explaining that "*a party should not be limited by its opponent's theory of the case in determining what is discoverable*." 298 F.R.D. 244, 265 (W.D. Pa. 2014). This case, which did not involve either the MHPA or PDAACA, applied the broad view of discovery and overruled resistance to producing relevant information, even if some information produced may later be determined to be irrelevant.

In *O'Boyle v. Jensen*,[5] the court compelled the production of the plaintiff's complete medical record, including alcohol/drug abuse treatment records, holding that "*[i]t has long been established that the privilege of confidential in medical records 'evaporates' when the patient brings a personal injury action which calls into question his physical or mental condition*." 150 F.R.D. 519, 522 (M.D. Pa. 1993) (emphasis supplied). The court explained:

> [S]tatutorily-created privileges are not absolute. The privilege conferred must be balanced against countervailing interests in insuring the fairness and integrity of the judicial system. The state's "compelling interest" in insuring

---

[5] In his brief, Plaintiff attributes a lengthy passage addressing the MHPA to *O'Boyle*, which he contends is an "analogous case." (Doc. 24, pp. 4-5.) However, *O'Boyle does not contain the quoted language*. Instead, that passage appears in *Commonwealth v. Segarra*, 228 A.3d 943 (Pa. Super. 2020), which was a criminal rape prosecution wherein the defendant sought the non-party victim's inpatient mental health treatment records. Finding the MHPA applied because the victim received "inpatient treatment" at a "facility," [*see supra* n.4], it held that records maintained by any member of the victim's treatment team at the clinic and used by the team for the purpose of psychotherapeutic evaluation was privileged. *Id.* at 955.

These cases could not be less analogous. Plaintiff is a civil litigant seeking monetary damages; not a non-party rape victim in a criminal prosecution. Plaintiff represents he has not sought any mental health treatment; not that he received inpatient treatment at a facility. The MHPA does not apply. [*See infra* Part IV.A.2.]

that the truth is revealed in the course of the adversarial process justifies an implied waiver of the privilege.

* * *

No privilege bars the disclosure of [the plaintiff]'s medical records pertaining to his medical condition or treatment for drug or alcohol abuse from the defendants. ***Plaintiff waived the right to assert privileges against disclosure of such records by filing this action***. While the privilege has been waived for discovery purposes, this does not grant defendants *carte blanche* to utilize or disclose the records in any manner they see fit. The court has ruled only on the discoverability of the records. Their admissibility at trial is a separate issue which will be addressed at the time of trial.

*Id.* at 524. Neither case limits discovery of any medical records; to the contrary, they both support broad discovery into issues made relevant by the claims the plaintiff asserted in the lawsuits.

5. *Counsel's representation that no records exist do not render the requested records irrelevant or warrant protection from the Court's Order.*

Finally, Plaintiff is not entitled to relief merely because his counsel represents that no records exist. Without question, Defendant is entitled to verify such representations, especially considering that such representations are incompatible with others offered by Plaintiff in this case. Specifically, nowhere in any iteration of Plaintiff's verified discovery responses has he submitted a "none" response, [*see* Exs. B-F], and he has gone so far as to defy a court order directing him to execute the authorizations, (*see* Docs. 21 & 23). Indeed, the Court should question the reason Plaintiff has gone to such lengths, such as by failing to identify his providers, failing to execute the authorizations as requested during

16

discovery, failing to execute the authorizations that he has been directed to execute, and filing this Motion seeking protection from a Court Order, to prevent Defendant from even inquiring into the subject.  But, in any event, this representation was raised by Plaintiff – and rejected by the Court – before.  (*See* Doc. 14; Doc. 21.)  And for good reason.  Where, as here, Defendant disputes Plaintiff sustained any emotional or mental health injury as a result of the alleged discriminatory conduct, the absence of records is relevant, as it tends to prove he has, in fact, not suffered the damages he claims.  The absence of evidence, indeed, can be relevant. Counsel's insistence that no records exist neither curtails the discovery that Defendant is entitled to nor prevents Defendant from investigating Plaintiff's representations.

* * *

This Court should not allow Plaintiff to demand money for damages he claims was caused by Defendant without requiring him to cooperate in discovery which could – and likely will – undermine those claims.  Granting Plaintiff's Motion would allow Plaintiff to proceed with a claim on unequal terms.  If Plaintiff wants to be compensated for his alleged emotional or mental health injuries, as he has demanded, Defendant must be able to explore in discovery the veracity of his claim as well as other circumstances that may have caused the injury, if any exists.  To allow a plaintiff to hide behind a claim of privilege when he placed that condition directly at issue would be contrary to the most basic sense of fairness and justice.

B. Plaintiff's Motion for Protective Order should be deemed withdrawn due to Plaintiff's procedural violation causing additional delay.

This Court, however, need not even reach the merits of Plaintiff's arguments because his Motion should be deemed withdrawn.  Local Rule 7.5 provides that:

> If the motion seeks a protective order, a supporting brief shall be filed with the motion.  If a supporting brief is not filed within the time provided in this rule, the motion shall be deemed to be withdrawn.

M.D. Pa. L.R. 7.5.  Plaintiff filed his Motion on 5/11/21.  (Doc. 22.)  He filed his brief more than a week later. (Doc. 24.)  The effect of his violation was to further delay Defendant's receipt of records it has been requesting since last November and should not be tolerated.

C. Plaintiff's Motion should be denied because he repeatedly waived any objection to producing the Medical Records, as initially requested by Defendant.

This Court also should deny Plaintiff's Motion because he waived any objection to producing any medical records from any medical provider.  Rule of Civil Procedure 34 requires a party to produce responsive documents "or state with specificity the grounds for objecting to the request, including the reasons."  F.R.C.P. 34(b)(2)(B).  Failure to object to discovery requests results in waiver of otherwise valid objections, including on the basis of privilege.  *Shenker v. Sportelli*, 83 F.R.D. 365, 366 (E.D. Pa. 1979); *see also Pritchard v. Dow Agro Sci.*, 263 F.R.D. 277, 289 (W.D. Pa. 2009) (quoting *Coregis Ins. v. Baratta & Fenerty*, 187 F.R.D. 528, 530 (E.D. Pa. 1999)); *Dietz & Watson v. Liberty Mut. Ins.*, No. 14-cv-4082, 2015 WL 2069280, *4-5 (E.D. Pa. May 5, 2015).

18

Nowhere in Plaintiff's initial response of 2/8/21, [Ex. C, ¶ 9], revised response of 3/2/21, [Ex. F, ¶ 9], or "third" response submitted to the Court dated 3/26/21, (Doc. 24-3, p. 4, ¶ 9), did he assert any objection to executing any authorization for any of the medical records Defendant requested.  To the contrary, he *invited* Defendant to obtain the records and *committed* to providing authorizations for the same.[6] [Ex. C, ¶ 9 ("[T]he [requested medical records] *may be obtained* by health care providers listed on the list at Attachment E hereto.");  Ex. F, ¶ 9 ("[A] signed authorization *will be provided* as soon as possible for any remaining medical records not within Plaintiff's possession or custody."); Doc. 24-3, p. 4, ¶ 9 ("… *pending a signed authorization from Plaintiff*.").]  His commitment to providing the authorizations was still reflected in the midst of this discovery dispute and after this Court's 5/7/21 Order that he now challenges.  [Ex. G ("We *will provide* [the Medical Records Release] to you as soon as it is received."); Ex. J (requesting a revised "medical records authorization to reflect the time period for disclosure contained in Judge Kane's second, 5.7.21 Order").]  Even if this Court somehow finds Defendant's request for Plaintiff to produce or authorize the release of the requested medical records to be

---

[6] Defendant maintains that Medical Records dating back to the start of Plaintiff's employment with Defendant, *i.e.*, 4/6/09, are relevant and discoverable, especially with respect to those records authored by Medical Providers who treated Plaintiff for his alleged disabling medical conditions, including his primary care physician.  For example, if Plaintiff's medical conditions had not changed since he began his employment, it would undermine his claim that Defendant began harassing him due to a disability when it hired him despite his having a disability. Defendant respectfully submits that, if this Court modifies its 5/7/21 Order at all, it should *expand* the timeframe for records to which Defendant is entitled to the same categories of records, from 4/9/16 to 4/6/09.  (*See* Doc. 23-1, p. 3 (Email, dated 5/7/21 (1053 am)).)

objectionable, which it should not, it should also find that Plaintiff waived any objection to the same, which he repeatedly and clearly did.

## V.    **CONCLUSION**

Defendant has been seeking authorizations for Plaintiff's medical records for over six months.  Despite never objecting – and, in fact, promising authorizations for those records were forthcoming – he has never provided them, even after this Court ordered that he do so.  His Motion raises the same issues previously rejected by the Court and is independently legally meritless.  This Court should deny the Motion and order Plaintiff comply with its Order, (Doc. 21), or be subject to sanctions if he fails to do so.

Respectfully submitted:

Date:  June 2, 2021.

**BRUCE D. BRANDLER**
Acting United States Attorney

/s/ *Harlan W. Glasser*
Harlan W. Glasser (PA 312148)
Melissa A. Swauger (PA 82382)
Assistant U.S. Attorneys
228 Walnut Street, Suite 220
Harrisburg, PA 17101
(717) 221-4530
harlan.glasser@usdoj.gov
Melissa.swauger@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT L. GANOE, SR. | : | |
| | : | CIVIL NO.: 1:20-CV-663-YK |
| Plaintiff, | : | |
| | : | JUDGE YVETTE KANE |
| v. | : | |
| | : | [ELECTRONICALLY FILED] |
| MARK D. ESPER, | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.8(b)(2), I certify, based upon the word-count feature of the word processing system used to prepare Defendant's Brief in Opposition to Plaintiff's Motion for Protective Order, that this brief complies with the word-count limit described in Local Rule 7.8(b)(2), in that the brief contains fewer than 5,000 words, to wit, 4,912 words.

<div style="margin-left:auto">

**BRUCE D. BRANDLER**
Acting United States Attorney

/s/ *Harlan W. Glasser*
Harlan W. Glasser (PA 312148)
Assistant U.S. Attorney
228 Walnut Street, Suite 220
Harrisburg, PA 17101
(717) 221-4530
harlan.glasser@usdoj.gov

</div>

Date: June 2, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT L. GANOE, SR. | : |
| | : CIVIL NO.: 1:20-CV-663-YK |
| Plaintiff, | : |
| | : JUDGE YVETTE KANE |
| v. | : |
| | : [ELECTRONICALLY FILED] |
| MARK D. ESPER, | : |
| | : |
| Defendant. | : |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers and that, on June 2, 2021, she caused to be served a copy of the attached:

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

by ECF to:

Keith E. Kendall, Esquire
Scaringi & Scaringi
20 North Hanover Street, Suite 201
Carlisle, PA 17013
Keith@scaringilaw.com

<div align="right">

/s/ Samantha Deibert
Samantha Deibert,
Legal Assistant

</div>