IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT L. GANOE,** : | |
|     **Plaintiff** : | No. 1:20-cv-00663 |
| : | |
|     v. : | (Judge Kane) |
| : | |
| **SECRETARY OF DEFENSE LLOYD** : | |
| **J. AUSTIN III,** : | |
|     **Defendant** : | |

## MEMORANDUM

Before the Court is Defendant Secretary of Defense Lloyd J. Austin ("Defendant")'s motion for an order (1) directing Plaintiff Robert L. Ganoe ("Plaintiff") to comply with the Court's orders directing him to produce copies of his tax returns and (2) sanctioning Plaintiff by dismissing this case and, alternatively, by imposing lesser sanctions. (Doc. No. 57.) For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.

**I.     BACKGROUND**

Plaintiff commenced this action in April 2020, alleging that his former employer—the Defense Logistics Agency of the United States Department of Labor—subjected him to age and disability discrimination and whistleblower retaliation, culminating with his November 2018 "removal from his position." (Doc. No. 1.) Defendant filed an answer to Plaintiff's complaint, and the parties entered into a stipulation of confidentiality, which the Court approved. (Doc. Nos. 4, 8, 11.) Discovery ensued, and in November 2020, Defendant propounded a demand for "Plaintiff's federal, state, and local tax returns filed within or outside the United States of America, along with all schedules, W-2s, and paystubs, for the years ending December 31, 2009 to the present." (Doc. No. 57-2 ¶ 11.) Plaintiff objected to the demand as "overly broad, unduly burdensome, and repetitive, in that Defendant should have all information requested, among its

payroll records," but nevertheless agreed to "provide his tax returns from his removal forward, upon further request and limitation of this inquiry." (Id.)

On April 12, 2021, Defendant submitted a letter to the Court indicating that Plaintiff refused to disclose any tax returns whatsoever. (Doc. No. 13.) Exhibits to Defendant's letter included a string of emails sent to and from counsel for both parties. (Doc. No. 13-2.) The emails—the first of which was sent in early April 2021—indicate that when Defendant advised Plaintiff's counsel of Defendant's non-receipt of Plaintiff's "tax information," Plaintiff's counsel wrote: "I objected to the tax records[.]" (Id. at 7.) The emails also reflect Defendant's assertion that Plaintiff's tax returns are relevant for the purpose of "quantifying [Plaintiff's] lost wages and benefits" following his removal. (Id. at 5.) In response to Defendant's April 12th letter, Plaintiff's counsel wrote that he would "recommend that [Plaintiff] provide his tax returns for 2018, 2019 and 2020," adding, "[l]et me know if that will suffice." (Id. at 4.) Defendant replied: "while I hope your client will take your recommendation, I am beyond the point I can wait any longer. Please confirm [Plaintiff] will produce the requested tax records for tax years ending 2018-2020, which includes all schedules, W-2s, and paystubs . . . ." (Id. at 3.) After meeting with his client to obtain "a clear path going forward as to all pending issues" (Doc. No. 54), Plaintiff's counsel responded to Defendant by stating: "[m]y client will not voluntarily release any tax returns, in that (a) you've requested tax records that precede any relevant claim in this case; and (b) he has always filed joint returns with his wife's private financial information included" (Doc. No. 13-2). Counsel further represented that Plaintiff would "provide check stub information for both positions he [] held since his removal[.]" (Id.; Doc. No. 1-5 at 2.)

The Court scheduled a conference in response to Defendant's April 12th letter in an effort to resolve the parties' dispute over the production of Plaintiff's tax returns. At the conference,

2

held on May 5, 2021, Plaintiff's counsel represented that he would provide Defendant with three (3) years' worth of Plaintiff's tax returns, and at the parties' request, the Court ordered Plaintiff to do so ("May 5th Order"). (Doc. No. 20.) On May 17th, in connection with an unrelated discovery dispute, Defendant submitted a letter stating, in relevant part, that "Plaintiff produced certain redacted tax records for 2018-2020 on 5/14/21. Defendant has not yet determined whether Plaintiff's production is complete or evaluated whether any of Plaintiff's applied redactions are material but will first attempt to resolve any such issues with Plaintiff's counsel as necessary." (Doc. No. 23 at 1 n.1.) The parties engaged in further discovery from mid-2021 until June 2022 and requested and were granted extensions to complete fact discovery. (Doc. Nos. 29, 31, 33-34, 36-39.)

On June 20, 2022, during a post-discovery status conference, the parties stated that fact discovery would be completed in one week's time and asked for an opportunity to confer and submit a proposed schedule for expert report and dispositive motion deadlines. The Court ordered the parties to submit a joint status report, the parties complied, and the Court set relevant deadlines, including a December 19, 2022 deadline for the filing of dispositive motions.[1] (Doc. Nos. 43-45.) Before that deadline, however, on September 13, 2022, Defendant filed another letter with the Court representing that although Plaintiff provided tax returns pursuant to the Court's May 5th Order, Plaintiff impermissibly redacted the returns and failed to provide a copy of his 2021 joint tax return. Defendant specifically stated:

> On 5/14/21, Plaintiff produced incomplete and unilaterally redacted versions of his tax returns for years 2018-2020. That production included 2 redacted pages of his IRS 1040 for year 2018, 4 redacted pages of his IRS 1040 for year 2019, 4 redacted pages of his IRS 1040 for year 2020, and no pages of his IRS 1040 for year 2021. The undersigned immediately alerted opposing counsel to this impropriety but, to

---

[1] The case management deadlines were later extended, at the parties' request, resulting in a February 17, 2023 deadline for dispositive motions. (Doc. No. 50.)

> avoid further burdening the Court and to allow this matter to progress, agreed to postpone seeking compliance with the Court's discovery order until the defense experts needed complete copies of the tax returns to evaluate Plaintiff's claim for economic damages.
>
> Defendant has, in good faith, attempted to obtain these tax returns, which Plaintiff had agreed and was ordered more than a year ago to produce, without burdening this Court's docket yet again. Despite those efforts, Defendant still does not have fundamental information that it and its expert needs to appropriately value this case and defend Plaintiff's claim for economic damages and, as a result, anticipates needing an extension of the remaining case management deadlines.

(Doc. No. 46 at 1.)

The Court directed Plaintiff to respond to Defendant's letter, and Plaintiff complied on October 7, 2022, stating:

> Please allow this letter to serve as a response to Your Honor's Order dated October 5, 2022 requiring a response to allegations that Plaintiff failed to comply with the Court's May 14, 2021 Order, which directed Plaintiff to Provide three years' worth of tax returns.
>
> The May 5, 2021 Order required Plaintiff to provide copies of his tax returns for the past three (3) years. As of the time of the Order, the filing deadline, absent extensions, had just passed for the tax year 2020. Therefore, the past three years would encompass the years 2018, 2019, and 2020.
>
> Our records indicate that tax returns were provided for the years 2018, 2019, and 2020 pursuant to the Order through Plaintiff's previous attorney. My client has correctly pointed out that the current request exceeds the time period scope of the Order. The undersigned would be happy to resubmit the forms that appear to be previously provided. In complete candor, a review of the documents reveals redactions to the joint returns provided, which appear to be items applicable not to Plaintiff, but to Plaintiff's wife, who is not a party to the case.

(Doc. No. 48) (citations to the record omitted).

After considering the parties' letter submissions and Defendant's request for an order directing Plaintiff to provide unredacted copies of his and his wife's 2018, 2019, and 2020 joint tax returns—as well as an unredacted copy of their 2021 joint tax return—the Court issued an Order, dated November 9, 2022, partially granting Defendant's request. (Doc. No. 50 at 3.)

Specifically, the Court ordered "Plaintiff to produce a copy of his and his wife's 2021 joint tax return, with appropriate redactions where the return contains information pertaining solely to Plaintiff's wife[.]"[2] (Id.) (citing Jackson v. Unisys, Inc., No. 08-cv-03298, 2010 WL 10018, at *2 (E.D. Pa. Jan. 4, 2010) (finding tax return relevant, "particularly as it relates to the mitigation of damages," where the "[p]laintiff ha[d] placed his income in dispute by claiming he suffered a loss of wages")). The Court denied Defendant's request insofar as it sought wholly unredacted copies of Plaintiff's tax returns on the basis that "[p]ermitting [those] redactions reflect[ed] a reasonable balancing of Plaintiff's and his wife's privacy interests in their individual tax returns against Defendant's need for the returns." (Id. at 5) (citing Williams, 2009 WL 10690508, at *4 (finding tax returns relevant to damages but permitting redactions "insofar as the documents disclose information regarding [the p]laintiff's wife]")).

On December 9, 2022—two months before the dispositive motion deadline—Defendant submitted yet another letter concerning the tax returns. (Doc. No. 51.) In that letter, Defendant asserted Plaintiff's failure to produce "complete tax returns for years 2018, 2019, 2020, and 2021, subject to redactions for only Plaintiff's wife's information." (Id. at 1.) Defendant sent several emails that Plaintiff's counsel allegedly ignored and despite which "Plaintiff [] neither produced the remaining pages from his 2018, 2019, or 2020 tax returns, . . . nor produced any

---

[2] As the Court noted, while "[p]ublic policy favors the nondisclosure of income tax returns," see Jackson, 2010 WL 10018, at *2 (quoting DeMasi v. Weiss, 669 F.2d 114, 119 (3d Cir. 1982)), they may be "discoverable [depending] on whether (1) the tax returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable," see Johnston v. Titan Logistics & Res., LLC, No. 17-cv-01617, 2021 WL 119565, at *1 (W.D. Pa. Jan. 13, 2021) (quoting Jackson, 2010 WL 10018, at *2 (quoting DeMasi, 669 F.2d at 119)); see also Williams v. Corr. Med. Servs., Inc., No. 06-cv-06243, 2009 WL 10690508, at *4 (D.N.J. Jan. 30, 2009) (noting that, "[t]o order disclosure of tax returns, the [c]ourt must balance [the p]laintiff's privacy interest against [the d]efendant's need for the requested returns").

5

portions of his 2021 tax return." (Id.)  Finding no other way to resolve the parties' years-long dispute over the tax records, the Court set a briefing schedule to permit Defendant to file a motion to compel the records' production.  (Doc. No. 56.)

On January 30, 2023, Defendant filed a pending motion—styled as a "Motion to Compel Plaintiff's Compliance with Court Orders"—together with fifteen (15) exhibits.  (Doc. No. 57; Doc. Nos. 57-1 through 57-15.)  As noted above, the motion is two-fold: it seeks an order both (1) compelling Plaintiff to produce copies of what Defendant asserts are unsigned, overly redacted, and incomplete tax returns; and (2) sanctioning Plaintiff by dismissing this action, or imposing lesser sanctions, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v).  (Id. at 6.)  Having been fully briefed (Doc. Nos. 58-60), Defendant's motion is ripe for disposition.

## II. LEGAL STANDARDS

Rulings concerning the proper scope of discovery and the extent to which discovery may be regulated are within the Court's sound discretion.  See Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  Federal Rule of Civil Procedure 26(b)(1), which the Court must construe liberally, permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  See Fed. R. Civ. P. 26(b)(1); see also Clements v. N.Y. Cent. Mut. Fire Ins. Co., 300 F.R.D. 225, 226 (M.D. Pa. 2014).  If a party served with a document demand under Federal Rule of Civil Procedure 34(a) fails to produce or permit inspection of documents, the serving party may file a motion to compel pursuant to Federal Rule of Civil Procedure 37(a).  See Fed. R. Civ. P. 37(a)(3)(B)(iv).

Rule 37(b)(2)(A), in turn, authorizes a district court to impose sanctions on a party who "fails to obey an order to provide or permit discovery."  Under this rule, a court can sanction a party by, inter alia, dismissing an action, prohibiting the disobedient party from "supporting designated claims," and/or directing the payment of reasonable expenses unless the failure to

6

comply with a discovery-related court order was substantially justified.[3]  See Fed. R. Civ. P. 37(b)(2)(A)(ii), (v), (b)(2)(C).  While the "decision to impose sanctions is generally entrusted to the discretion of the district court," Rule 37(b)(2)(A) "is not equivalent to carte blanche; it limits courts' discretion in two ways: [f]irst, any sanction must be just; second, the sanction must be specifically related to the particular claim which was at issue in the order to provide discovery."  See Clientron Corp. v. Devon IT, Inc., 894 F.3d 568, 580 (3d Cir. 2018) (internal quotation marks omitted).

## III.   DISCUSSION

Before addressing the merits of Defendant's motion to compel, the Court highlights what it has already held in this case.  First, Plaintiff has placed his post-removal employment earnings at issue by claiming lost future wages.  Second, and relatedly, the tax returns reflecting Plaintiff's post-removal employment earnings are relevant to Plaintiff's claim for lost wages and also to Defendant's claim that Plaintiff failed to mitigate damages.  Third, redactions to the tax returns are appropriate to prevent the disclosure of information that pertains solely to Plaintiff's wife.  Fourth, given Plaintiff's initial representation that he would "provide his tax returns from [the time of] his removal" forward (Doc. No. 57-2 ¶ 11), the parties' stipulation of confidentiality authorizing Plaintiff to designate his tax returns as "CONFIDENTIAL INFORMATION" and for "ATTORNEYS' EYES ONLY" (Doc. No. 8), and Plaintiff's counsel's agreement to produce tax returns and request for an order directing the same, the Court was well within its discretion to order Plaintiff to produce copies of his tax returns to Defendant.  It is against this background

---

[3] "Substantial justification for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance."  Claude Worthing Benedum Foundation v. Harley, No. 12-01386, 2014 WL 3614237, at *3 (W.D. Pa. July 22, 2014) (quoting Tolerico v. Home Depot, 205 F.R.D. 169, 175-76 (M.D. Pa. 2002)).

that the Court turns to Defendant's motion.

### A. Motion to Compel Compliance with Court Orders

Defendant argues that the tax returns Plaintiff produced are deficient in three respects, arguing that they are unsigned, over-redacted, and incomplete. The Court will address the issue of whether (and the extent to which) Plaintiff violated its Orders before determining whether to grant the relief Defendant seeks. Defendant's first argument (that the returns Plaintiff produced are unsigned) is undoubtedly true: all four of the Form 1040s[4] Plaintiff produced are, in fact, unsigned. (Doc. Nos. 57-6, 57-7, 57-8, 57-12.) Plaintiff does not address this omission, and in the Court's view, a signature indicating that that the taxpayer swears to the truth and accuracy of the information in the tax forms is significant in that it provides some assurance that the forms are final copies of the original forms submitted to the Internal Revenue Service ("IRS"). In short, the Court concludes that Plaintiff's failure to produce signed/final tax returns violated the Court's Orders under the circumstances presented here.

As to Defendant's second argument—that Plaintiff over-redacted his tax returns—the Court agrees, as an initial matter, that Plaintiff over-redacted his 2021 Form 1040. The Court's November 9, 2022 Order—by which it directed Plaintiff to produce his 2021 tax return—allowed Plaintiff to redact the return "to prevent the disclosure of information pertaining solely to [his] wife." (Doc. No. 50 at 5) (emphasis added). Yet, as Plaintiff concedes, he redacted "information that is partly that of the [his wife]."[5] (Doc. No. 59 at 2) (emphasis added). By redacting more than just his wife's financial information, Plaintiff necessarily over-redacted his 2021 Form 1040 in violation of the Court's Order. But as to Plaintiff's 2018, 2019, and 2020 tax returns, the

---

[4] These are "U.S. Individual Income Tax Return" forms.

[5] For example, Plaintiff redacted Line 1 of his Form 1040s, pertaining to his and his wife's "[w]ages, salaries, tips, etc." (Doc. Nos. 57-6 at 1, 57-7 at 1, 57-8 at 1, 57-12 at 1.)

Court's November 9, 2022 Order did not expressly address whether those returns, which Plaintiff had produced in 2021, were over-redacted. (Doc. No. 50.) The Court simply denied Defendant's request for an order directing Plaintiff to provide wholly unredacted copies of those returns. (Id. at 3.) Because the Court did not compel Plaintiff to un-redact portions of his 2018, 2019, and 2020 tax returns—either in its November 9, 2022, or May 5, 2021 Orders—Plaintiff did not necessarily violate the Court's Orders in this regard.

Finally, concerning Defendant's argument that the tax returns Plaintiff produced are incomplete, the Court agrees in part. In contending that Plaintiff produced incomplete tax returns by failing to provide related W-2s, schedules, and attachments—all of which Plaintiff argues are neither in his possession nor documents that comprise his tax returns—Defendant observes that a tax return is broadly defined by statute, viz.:

> The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

See 26 U.S.C. § 6103(b)(1) (emphasis added); (Doc. No. 60 at 5). These provisions undercut Plaintiff's assertion that a "tax return" consists solely of a Form 1040, at least to the extent that a tax return includes "schedules, attachments, or lists which are supplemental to, or part of, the return so filed." See 26 U.S.C. § 6103(b)(1).

Further, when Plaintiff produced parts of his Form 1040s to Defendant in 2021, he included attachments including schedules. To his 2018 Form 1040 he attached a schedule relating to his state income tax return. (Doc. No. 57-6 at 2.) To his 2019 Form 1040 he attached a schedule relating to his federal income tax return ("SCHEDULE 1") and another schedule relating to his state income tax return ("PA SCHEDULE W-2S"). (Doc. 57-7 at 3-4.) To his

9

2020 and 2021 Form 1040s he attached "Gross Compensation Worksheet[s]" relating to his state income tax returns.  (Doc. No. 57-8 at 3.)  Based on Plaintiff's provision of these documents and the clear import of the statute cited by Defendant, the Court rejects Plaintiff's contention, on this record, that a "tax return" is a Form 1040 and nothing more.

Nevertheless, 26 U.S.C. § 6103(b)(1) does not specifically reference W-2s or Form 1099s, and the Court has not had occasion to rule on or clarify whether Defendant's requests for tax returns and the Court's resulting Orders regarding the same, encompassed those documents.  Moreover, Defendant's initial discovery demand sought "tax returns filed within or outside the United States of America, along with all schedules, W-2s, and paystubs, for the years ending December 31, 2009 to the present."  (Doc. No. 57-2 at 11.)  To the extent that this language suggests that "tax returns" are distinct from schedules, W-2s, and paystubs, the Court cannot definitively conclude that its Orders directing the returns' production put Plaintiff on notice that "tax returns," for purpose of the Orders, included W-2s or, for that matter, 1099s.  This does not, however, change the fact that § 6103(b)(1) explicitly provides that tax returns include schedules.  Thus, while the Court concludes that Plaintiff's production of his Form 1040s without schedules violated the Court's Orders, the Court cannot similarly conclude that Plaintiff violated the Court's Orders by failing to produce his W-2s/1099s.

In sum, the Court finds that Plaintiff has failed to comply with the Court's Orders in the following ways: (1) by providing unsigned copies of his Form 1040s; (2) by redacting his 2021 Form 1040 beyond information pertaining solely to his wife; and (3) by failing to produce all schedules relating to his Form 1040s.  The Court takes no action as to Defendant's remaining claims regarding Plaintiff's conduct during discovery, because in spite of Plaintiff's history of dilatoriness—and  his grudging and inadequate compliance with prior orders—it is not entirely

clear that Plaintiff has violated the Court's orders in any other respect.

The Court will therefore grant Defendant's motion to the extent of directing Plaintiff to provide signed copies of his completed Form 1040s, including schedules, for the years 2018, 2019, 2020, and 2021. The Court will also grant Defendant's request for an order directing Plaintiff to provide a signed authorization, a copy of which Defendant provided to Plaintiff several months ago (Doc. No. 57-10), authorizing Defendant to obtain Plaintiff's W-2s and 1099s for the same time period.[6] However, because the Court's rulings will provide Defendant with ample information from which to glean Defendant's post-removal earnings, the Court will not require Plaintiff to produce unredacted Form 1040s, at least to the extent that the redactions he made to the forms pertain to joint information relating to both him and his wife. The Court is unpersuaded by Defendant's contention that permitting such redactions will impede Defendant's ability to determine Plaintiff's post-removal earnings/income, and the Court is mindful of Defendant's wife's privacy interests. Having addressed Plaintiff's failures to comply with the

---

[6] Plaintiff now asserts that he has no objection "to discovery of his own (but not his wife's or joint) W-2s and any 1099s that may exist," stating: "the notion that Plaintiff is in possession of them where he relied on his tax professional, which was also the source of the return items he was able to provide and from which the redactions are made, is misguided." (Doc. No. 59 at 5.) Plaintiff asserts that Defendant can obtain his post-removal earnings from the W-2s through a subpoena. (Id.) The Court has once again reviewed Plaintiff's prior letters regarding this protracted discovery dispute, and nowhere in those letters did Plaintiff argue that he lacks possession over his tax records. (Doc. Nos. 14, 48.) In any event, as Defendant notes, Rule 26 of the Federal Rules of Civil Procedure requires a party to produce documents within its "possession, custody, or control" that the party "may use to support its claims or defenses." See Fed. R. Civ. P. 26(a)(1)(A)(ii). Having never disputed that his post-removal earnings are relevant to his claims for lost wages, Plaintiff obviously had an obligation to produce documents reflecting those earnings, even without a request from Defendant. See id. Plaintiff claims to have no opposition to Defendant's discovery of the W-2s and 1099s, and it is no undue burden for Plaintiff to simply sign an authorization permitting Defendant to obtain copies of his W-2s and 1099s for the relevant years. The Court notes, however, that the authorization Defendant provided to Plaintiff includes Form 1040s, which the Court has compelled Plaintiff to provide in redacted format and which need not be included in the authorization.

Court's Orders, the Court turns to Defendant's request for sanctions.

### B.     Motion for Rule 37 Sanctions

As the Court noted, supra, its authority to impose sanctions for failure to obey discovery orders is limited in two respects: sanctions must be "just" and "specifically related to the particular claim which was at issue in the order to provide discovery." See Clientron Corp., 894 F.3d at 580 (internal quotation marks omitted).  Generally, to impose the drastic sanctions sought by Defendant here—dismissal of this action, or preclusion of all claims for economic damages together with monetary sanctions (Doc. No. 58 at 24 & n.5)—the Court must consider the factors set forth in Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863 (3d Cir. 1984), which are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

See Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003) (quoting Poulis, 747 F.2d at 868); see also Knoll v. City of Allentown, 707 F.3d 406, 409 (3d Cir. 2013) (noting that courts must consider the Poulis factors before imposing Rule 37 sanctions in the form of dismissal or where "alternative sanctions were tantamount to dismissal").

The Court need not consider the Poulis factors here, however, because the Court concludes that imposition of drastic sanctions would be unjust under the circumstances of this case.  The record suggests a pattern of evasiveness on the part of Plaintiff regarding his tax records.  Nevertheless, Plaintiff produced the incomplete tax returns to Defendant in 2021, at which point Defendant could have requested that the Court set a briefing schedule for a motion to compel or served subpoenas upon the IRS to obtain Plaintiff's tax-related records.  Further, Defendant never attempted to clarify, by requesting an order directing the same, that his request

for tax returns necessarily included schedules, W-2s, and 1099s. Thus, while Defendant cannot be blamed for his attempts to informally resolved the disputes surrounding the tax returns, the Court concludes that dismissal of this case or preclusion of Plaintiff's claims for economic damages would be inappropriate at this time.

The Court nonetheless finds monetary sanctions appropriate. In this regard, "[t]he Court must grant a Rule 37(b)(2) motion for monetary sanctions unless the nonproducing party's 'failure [to obey a court order] was substantially justified or other circumstances make an award of expenses unjust.'" See Rohrbach v. NVR, Inc., No. 19-cv-05847, 2022 WL 3904664, at *1 (E.D. Pa. July 8, 2022) (emphasis added) (quoting Fed. R. Civ. P. 37(b)(2)(C)). Here, Plaintiff was not substantially justified in failing to comply with his initial agreement to provide his tax returns from his removal forward, in failing to honor his counsel's agreement to provide copies of his original (e.g., signed, completed, and submitted) tax returns, which include schedules, and the Court's related Order directing the same, in representing that he has no control over access to his W-2s and 1099s, and in redacting his 2021 Form 1040 to prevent disclosure of financial information pertaining, in part, to his taxes and not "solely" that of his wife. This conduct, at the very least, warrants monetary sanctions. Striking a balance in discharging its obligation to impose only just sanctions, the Court will impose a monetary sanction upon Plaintiff with respect to reasonable fees and costs Defendant incurred in filing its pending motion. See id. (imposing "a monetary sanction on [p]laintiffs under Rule 37, but only with respect to the fees and costs [d]efendant incurred to file the [] motion to compel and . . . motion for sanctions").

While monetary sanctions are warranted, Defendant has not submitted documentation establishing the reasonableness of the costs and fees incurred in connection with the pending motion. This is expected given Defendant's assertion that he is entitled to outright dismissal or,

alternatively, preclusion of all of Plaintiff's claims for economic damages. Accordingly, the Court will direct Defendant to provide such documentation to enable the Court to determine the amount of the monetary sanction to impose upon Plaintiff.

### IV.     CONCLUSION

For the foregoing reasons, the Court will grant Defendant's request for an order compelling Plaintiff's compliance with the Court's Orders to the extent of directing Plaintiff to: (1) produce signed copies of his completed Form 1040s, including schedules, for the years 2018, 2019, 2020, and 2021, with redactions to his wife's financial information, even where the redactions are made to prevent the disclosure of joint financial information; and (2) provide a signed authorization (IRS Form 8821) authorizing Defendant to obtain Plaintiff's W-2s and 1099s relating to his 2018, 2019, 2020, and 2021 tax returns. The Court will grant Defendant's request for sanctions to the extent of granting monetary sanctions under Rule 37(b)(2)(C) relating to the fees and costs that Defendant incurred in litigating the pending motion; the Court will direct Defendant to provide documentation of such fees and costs in accordance with the Court's concurrently issued Order. **Plaintiff is advised that any failure to comply with the Court's rulings herein, as set forth in the concurrently issued Order, may result in the Court's imposition of sanctions, including dismissal of this action**.