IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT L. GANOE, SR.,** : | |
|  Plaintiff : | No. 1:20-cv-00663 |
|  : | |
|  v. : | (Judge Kane) |
|  : | |
| **SECRETARY OF DEFENSE PETE** : | |
| **HEGSETH,**[1] : | |
|  Defendant : | |

**MEMORANDUM**

Before the Court are Defendant Secretary of Defense Pete Hegseth ("Defendant")'s motions to seal and submit documentation in camera (Doc. Nos. 81, 88), construed as motions for leave to file exhibits under seal,[2] and Defendant's unopposed motion to submit redacted documents pursuant to the parties' confidentiality stipulation (Doc. No. 87), along with Defendant's response (Doc. No. 86) to this Court's Order to show cause ("Show Cause Order") (Doc. No. 84) directing Defendant to show cause why the documents filed under seal in connection with his forthcoming motion for summary judgment should remain sealed pursuant to the requirements of In re Avandia Marketing, Sales Practices and Products Liability Litigation, 924 F.3d 662 (3d Cir. 2019) ("Avandia") governing the sealing of materials filed in connection with a summary judgment motion. Also before the Court are Defendant's motions for extension

---

[1] Pete Hegseth became the Secretary of Defense on January 25, 2025, succeeding Secretary Lloyd J. Austin III. Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party in an action brought against the public officer in an official capacity.

[2] Two of Defendant's pending motions are each entitled "Motion to Seal and Submit Documentation in Camera." (Doc. Nos. 81, 88.) However, it appears that Defendant is simply asking that the exhibit that he has already filed on the docket in this matter be sealed. This differs from the Court's understanding of "in camera review," which traditionally involves the submission of documents solely for the Court's review and not on the public docket, and thus, the Court construes these motions as motions for leave to file exhibits under seal.

of time to file motions for summary judgment (Doc. Nos. 85, 90) and Defendant's related briefing (Doc. Nos. 92–94) submitted in response to this Court's May 2, 2025 Order ("May 2, 2025 Order") (Doc. No. 91).  For the reasons that follow, the Court will deny Defendant's motion to seal and submit documentation in camera, construed as a motion for leave to file exhibits under seal (Doc. No. 81), and direct Defendant to file Docket Number 82 on the public docket.  The Court will grant Defendant's other pending motions (Doc. Nos. 87–88, 90) and deny Defendant's first motion for extension of time to file a motion for summary judgment (Doc. No. 85) as moot.

I.   **BACKGROUND**

This is an employment discrimination action brought by Plaintiff Robert L. Ganoe, Sr. ("Plaintiff") against Defendant alleging that he was removed from his employment with the Defense Logistics Agency ("DLA") of the United States Department of Defense for alleged misconduct that he avers was pretextual.  (Doc. No. 1.)  Plaintiff was employed by DLA as a General Supply Specialist (Instructor) from April 6, 2009 (id.), until he was terminated on November 19, 2018 (Doc. No. 1-5 at 2).

Plaintiff claims he was "subjected to age and disability discrimination; whistleblower reprisal and retaliation; and was ultimately terminated from his federal employment because of his age, disability, and/or for having engaged in protected EEO and whistleblower activities." (Id. at 3 ¶ 5.)  Plaintiff asserts the following claims against Defendant: violation of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302 (Count I); violation of the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 1221 (Count II); and age and disability discrimination and/or hostile work environment in violation of the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 633a, et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 (Count III). (Id. at 4–8.)

Shortly after Defendant filed an answer to Plaintiff's complaint (Doc. No. 4), the parties filed a joint stipulation of confidentiality (Doc. No. 8). The Court held a case management conference with the parties on August 28, 2020. (Doc. Nos. 9–10.) On September 11, 2020, the Court approved the stipulation of confidentiality. (Doc. No. 11.)

The Court briefly addresses the parties' discovery disputes and the lengthy course of discovery in this case. In November 2020, Defendant propounded a demand for "Plaintiff's federal, state, and local tax returns filed within or outside the United States of America, along with all schedules, W-2s, and paystubs, for the years ending December 31, 2009 to the present" in connection with Plaintiff's potential claim for damages, assuming liability was established. (Doc. No. 57-2 ¶ 11.) Plaintiff objected to the demand on several grounds but agreed to "provide his tax returns from his removal forward, upon further request and limitation of this inquiry," and his counsel later agreed to provide three (3) years' worth of tax returns and requested an order directing Plaintiff to produce the same. (Doc. Nos. 20, 57-2.) The Court ordered Plaintiff to do so and subsequently ordered him to produce a copy of his 2021 tax return, with appropriate redactions to prevent disclosure of his wife's confidential and financial information. (Doc. Nos. 20, 50.)

In December 2022—two years after Defendant propounded his discovery demand for the tax returns—Defendant informed the Court that Plaintiff had yet to produce the tax returns in compliance with the Court's Orders. (Doc. No. 51.)[3] The Court then set a briefing schedule for

---

[3] Until 2023, the Court attempted to resolve the parties' many discovery disputes surrounding the tax returns by scheduling conferences with the parties and entertaining informal letter

the filing of a motion to compel production of the tax returns. (Doc. No. 56.) In response, Defendant filed a timely "Motion to Compel Plaintiff's Compliance with Court Orders," by which Defendant sought an order: (1) compelling Plaintiff to produce complete copies of what Defendant asserts are unsigned, overly redacted, and incomplete tax returns; and (2) sanctioning Plaintiff by dismissing this action, or imposing lesser sanctions. (Doc. No. 57.) The parties fully briefed the motion (Doc. Nos. 58–60), and on March 8, 2023, the Court granted it in part (Doc. No. 61). Specifically, the Court directed Plaintiff to produce his tax returns in compliance with the Court's Orders and, regarding sanctions, ordered him to pay reasonable attorneys' fees incurred by Defendant in connection with the motion to compel/for sanctions and the then-forthcoming motion for attorney's fees. (Doc. No. 62 at 2.) The Court directed Defendant to submit, with any motion for attorneys' fees, documentation supporting an award of a specific amount of fees incurred as a result of the relevant motions. (Id.)

In response to the Court's March 8, 2023 Order, Defendant filed a motion for attorney's fees. (Doc. No. 63.) Less than one week later, Defendant filed a letter informing the Court that Plaintiff had still not provided full copies of his original, signed, and completed tax returns pursuant to the Court's March 8, 2023 Order. (Doc. No. 64.) In the same letter, Defendant detailed the efforts made to obtain complete copies of the tax returns and attached an email in which Plaintiff's counsel represented that he would provide authorizations to allow Defendant to obtain them but did not offer any reason why Plaintiff failed to provide the documents by the

---

briefing. (Doc. Nos. 12–15, 18–22, 46–48, 50–51, 53, 55–56, 64–65, 67.) Throughout the life of this case, the Court also granted several extensions of time to complete discovery, in large part due to Plaintiff's failures to produce the tax returns. (Doc. Nos. 17–18, 29–31, 33–34, 36–39, 44–45, 49–50, 52, 54, 56, 69, 71–73.)

Court-ordered deadline.  (Doc. Nos. 64, 64-1.)  After the parties briefed the motion for attorney's fees (Doc. Nos. 66–68), on June 15, 2023, the Court issued a Memorandum and Order granting Defendant's motion and directing Plaintiff to pay Defendant $5,250.00 in attorney's fees.  (Doc. Nos. 70–71.)  The Court also granted Defendant's unopposed motion for an extension of case management deadlines (Doc. No. 69), and set expert report deadlines (Doc. No. 71 at 1).

Thereafter, on July 26, 2023, Defendant filed an unopposed motion to extend case management deadlines "by 60 days from the date the Internal Revenue Service (IRS) provides Plaintiff's W-2s and 1099s."  (Doc. No. 72 at 1.)  The Court granted the motion and stated that "[u]pon receipt of Plaintiff's W-2s and 1099s from the IRS, Defendant's counsel shall file a notice with this Court and a proposed order extending the remaining case deadlines by 60 days thereafter."  (Doc. No. 73.)

On August 12, 2024, the Court issued an Order directing the parties to file a status report.  (Doc. No. 74.)  The parties filed a joint status report on August 23, 2024 and averred that Defendant's counsel had not received the W-2s or 1099s from the IRS.  (Doc. No. 75 at 1.)  On October 31, 2024, the Court conducted a telephone status conference with the parties and set a briefing schedule for motions for summary judgment as to the issue of Defendant's liability, noting that the documents sought from the IRS pertained only to Plaintiff's potential damages assuming liability is established.  (Doc. Nos. 77–78.)  On January 31, 2025, Defendant filed a motion for extension of time to file a motion for summary judgment, in which Plaintiff did not concur.  (Doc. Nos. 79, 79-1.)  On February 28, 2025, the Court granted the motion and set a deadline of March 17, 2025 for the filing of Defendant's summary judgment motion.  (Doc. No. 80.)

In early March 2025, Defendant filed his motion to seal and to submit documentation <u>in camera</u> along with the proposed documents, which were filed provisionally under seal.  (Doc. Nos. 81–83.)  Upon consideration of the motion, the Court issued its Show Cause Order directing Defendant to show cause as to why the exhibits "should not be made a part of the publicly available docket in this matter under the standards established by the United States Court of Appeals for the Third Circuit in <u>In re Avandia Marketing, Sales Practices and Products Liability Litigation</u>, 924 F.3d 662 (3d Cir. 2019)."  (Doc. No. 84.)  On March 17, 2025, Defendant filed another motion for extension of time to file a motion for summary judgment, in which Plaintiff did not concur.  (Doc. No. 85.)  Thereafter, on March 21, 2025, Defendant filed a response to the Court's Show Cause Order.  (Doc. No. 86.)

On April 30, 2025, Defendant filed an unopposed motion to submit redacted documents pursuant to the parties' confidentiality order (Doc. No. 87) as well as a concurred-in "motion to seal and to submit documentation <u>in camera</u>" (Doc. No. 88) with a submission filed provisionally under seal (Doc. No. 89).  The next day, Defendant filed another motion for extension of time to file a motion for summary judgment, in which Plaintiff did not concur.  (Doc. No. 90.)  Upon consideration of these motions, the Court issued its May 2, 2025 Order directing Defendant to file a brief in support of the relief he requests in the motions at Docket Numbers 81, 87, and 99.  (Doc. No. 91.)  Defendant accordingly filed briefs in response to the May 2, 2025 Order.  (Doc. Nos. 92–94.)  Defendant's effort to seal and redact documents related to his forthcoming summary judgment motion, Defendant's responses to the Court's March 12, 2025 and May 2, 2025 Orders, and Defendant's requests for an extension of time, are ripe for resolution.

## II.     LEGAL STANDARD

The Third Circuit's opinion in Avandia confirmed its earlier holding that a common law right of access applies to judicial records, stating that there exists a "presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." See Avandia, 924 F.3d at 672 (citing In re Cendant Corp., 260 F.3d at 192). The Third Circuit reiterated that "documents filed in connection with a motion for summary judgment are judicial records." See id. (citing Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 660–62 (3d Cir. 1991)). However, Avandia recognized that "the common law right of access is 'not absolute'" and stated that "[t]he party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" See id. (quoting Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986)). The Third Circuit held that "[t]he movant must show 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'" See id. (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

The Third Circuit then detailed the nature of a district court's obligation in determining whether a litigant has met its burden to show that the presumptive right of access has been overcome, stating:

> [T]he District Court must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide[] an opportunity for interested third parties to be heard. In delineating the injury to be prevented, specificity is essential. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. [C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants. To that end, the District Court must conduct[] a document-by-document review of the contents of the challenged documents.

7

See id. at 672–73 (cleaned up).

The Third Circuit in Avandia discussed not only the common law right of access to judicial records but also the First Amendment right of access to judicial proceedings, which "requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." See Avandia, 924 F.3d at 673 (quoting In re Cendant Corp., 260 F.3d at 198 n.13). "It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings." Id. The majority in Avandia declined to address the applicability of the First Amendment right of access to summary judgment materials under the circumstances of that case, where the litigant had not met its burden to overcome the presumptive common law right of access to judicial records. See id. at 679–80. However, as to the First Amendment right of access, the court stated that "[w]e use a two-prong test to assess whether the right of access attaches: (1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.'" See id. at 673 (quoting N. Jersey Media Grp. Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016)). If both prongs are met, the First Amendment right of access presumptively applies, and this presumption can be rebutted "only if [the party seeking closure is] able to demonstrate 'an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" See id. (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984)). In declining to consider the applicability of the First Amendment right of access under the

circumstances presented to it in Avandia,[4] the Court of Appeals directed that "[i]f on remand the District Court concludes that any of the sealed documents merits continued confidentiality under the common law right of access, then the Court should also consider the parties' arguments regarding the First Amendment right of public access." See Avandia, 924 F.3d at 680.

### III.   DISCUSSION

The Court first addresses Defendant's motion to seal and submit documentation in camera (Doc. No. 81), construed as a motion for leave to file exhibits under seal,[5] and Defendant's response to the Court's Show Cause Order and May 2, 2025 Order (Doc. Nos. 86, 92)—and whether Defendant has met his burden to show that his interest in secrecy outweighs the common law presumption of access to judicial records with respect to the documents he seeks to retain under seal on the docket of this matter—before addressing Defendant's unopposed motion to submit redacted documents pursuant to the parties' confidentiality stipulation (Doc. No. 87) and the related motion to seal and submit documentation in camera, construed as a motion for leave to file exhibits under seal (Doc. No. 88).[6]

---

[4] Judge Restrepo, in an opinion concurring in part and dissenting in part, concluded that the First Amendment right of public access extends to summary judgment materials. See id. at 681–84. The Second and Fourth Circuits have held that the First Amendment right of public access extends to summary judgment materials. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 124 (2d Cir. 2006); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988).

[5] See supra note 2.

[6] Finally, the Court addresses Defendant's motions for extension of time to file a motion for summary judgment. (Doc. Nos. 85, 90.)

      **A.**      **Defendant's Motion For Leave to File Exhibits Under Seal (Doc. No. 81)/ Responses to the Court's Orders (Doc. Nos. 86, 92)**

As discussed supra, Defendant filed his first motion to seal and to submit documentation in camera (Doc. No. 81) on March 4, 2025 with the exhibits filed provisionally under seal (Doc. No. 82). Plaintiff concurred in this motion. (Doc. No. 83.) The motion seeks to maintain under seal three (3) exhibits—an Office of Inspector General ("OIG") Report of Investigation from 2015, referred to as Exhibit 1 (Doc. No. 82 at 2–34), an OIG Report of Investigation from 2016, referred to as Exhibit 2 (id. at 35–245), and an email from Plaintiff dated November 5, 2017, referred to as Exhibit 3 (id. at 246–48). In his response to the Court's Show Cause Order, Defendant states that he "intends to file both OIG reports of investigation as exhibits to his statement of material facts," (Doc. No. 86 at 1 ¶ 2), and that the exhibits were filed provisionally under seal in accordance with the parties' confidentiality stipulation (id. at 1 ¶¶ 1, 3). Defendant also reports that "[i]n light of the Court's [Show Cause] [O]rder, the DLA Office of Inspector General, Investigations Division reconsidered its position and gave undersigned counsel permission to make OIG report of investigation 2015-DLA-PRE-0129 and OIG report of investigation 2016-DLA-INQ-0015 public." (Id. at 2 ¶ 6.) However, although Defendant was given permission to make the OIG reports public, he states that he must "submit such OIG reports of investigation under seal unless the parties otherwise agree or the Court orders otherwise" due to the parties' confidentiality stipulation and the lack of consent from Plaintiff. (Id. at 2 ¶ 7.)[7]

---

[7] The Court acknowledges that Plaintiff concurred in the motion prior to OIG's permission (Doc. No. 83) and did not file a response, but has not given consent pursuant to the confidentiality stipulation.

In his second response to the Court, Defendant again maintains that he was granted permission to release the OIG reports on the public docket. (Doc. No. 92 at 1.) However, because the contents of the OIG reports are subject to the parties' confidentiality stipulation (Doc. No. 8 at 5–6), Defendant requests that the Court deny the pending motion (Doc. No. 81) and direct him to file the OIG reports on the public docket, as required by the confidentiality stipulation (Doc. No. 92 at 4).

Although Defendant recognizes that there is a presumptive right of access to material submitted in support of a dispositive motion of a nondiscovery nature (like a summary judgment motion), see (Doc. No. 92 at 4) (citing Republic of Phil. v. Westinghouse Elec. Corp., 949 F.2d 653, 660–62 (3d Cir. 1991)), Defendant does not attempt to make a showing under Avandia and instead relies on the confidentiality stipulation—a tool of discovery governed by Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994).

By relying on the confidentiality stipulation, Defendant appears to overlook the fact that "[a]nalytically distinct from the District Court's ability to protect discovery material under Rule 26(c) [,which is governed by the seven Pansy factors], the common law presumes that the public has a right of access to judicial materials," and "documents filed in connection with a motion for summary judgment are judicial records." See Avandia, 924 F.3d at 672. A party seeking to seal judicial records "bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" See id. (quoting Bank of Am. Nat'l Trust & Sav. Ass'n., 800 F.2d at 344).[8]

---

[8] In Avandia the Third Circuit opined that:

> while the Pansy factors may provide useful guidance for courts conducting the balancing required by the common law test, the Pansy factors do not displace the common law right of access standard. The difference is not merely semantic—the Pansy factors are not sufficiently robust for assessing the public right to access

11

As noted supra, the Court has an obligation to determine whether a litigant has met his burden to show that the presumptive right of access has been overcome. See Avandia, 924 F.3d at 672–73 (stating that a district court "must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide[] an opportunity for interested third parties to be heard"). Defendant's motion and responses to the Court fail to provide the information necessary for this Court to conduct the "factfinding and balancing of competing interest [] required before the strong presumption of openness can be overcome by the secrecy interests of private litigants." See id.[9] Therefore, the Court will deny Defendant's motion (Doc. No. 81) as moot and direct Defendant to file the OIG reports (Doc. No. 82 at 2–245), referred to as Exhibits 1 and 2, on the public docket in support of his forthcoming motion for summary judgment.

As to the email from Plaintiff (Doc. No. 82 at 246–48), referred to as Exhibit 3, Defendant provides no argument as to why it should remain under seal and thus Defendant has not met his burden to demonstrate why this email should remain under seal pursuant to Avandia. Further, the email similarly relates to Plaintiff's whistleblower claim. In fact, Defendant requests

---

    judicial records. Unlike the Rule 26 standard, the common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access.

See Avandia, 924 F.3d at 676. The Avandia court also noted that "some of the Pansy factors are incompatible with our case law on the common law right of access." See id.

[9] The Third Circuit discussed not only the common law right of access to judicial records but also the First Amendment right of access, which "requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." See Avandia, 924 F.3d at 673 (quoting In re Cendant Corp., 260 F.3d at 198 n.13). "It remains an open question in this Circuit whether the First Amendment right of access applies to record of summary judgment proceedings." Id.

that the Court deny the motion and direct him to file the documents on the public docket. Accordingly, the Court will deny the motion and direct Defendant to file all three exhibits on the public docket within fourteen (14) days of the issuance of this Memorandum and Order and in conjunction with his motion for summary judgment.

> **B.  Defendant's Unopposed Motion to Submit Redacted Documents Pursuant to Confidentiality Stipulation (Doc. No. 87) and Motion For Leave to File Exhibits Under Seal (Doc. No. 88)/ Responses to the Court's Orders (Doc. Nos. 93–94)**

Defendant's unopposed motion to submit redacted documents pursuant to the parties' confidentiality stipulation requests that the Court allow him to file "a record in support of summary judgment of documents related to ten non-party DLA comparator employees" in which the employees' names, months and dates of birth, social security numbers, mailing addresses, telephone numbers, and their EDIPI numbers are redacted. (Doc. No. 87 at 1, 1 n.1.)[10] Defendant seeks to redact this information from forty-two (42) exhibits (Doc. Nos. 87-4 through 87-45) described in the attached table of contents (Doc. No. 87-3 at 2–4).[11] The non-party

---

[10]  Defendant explains that an employee's EDIP number, also known as the "DOD Identification Number," is "a unique 10-digit number assigned to individuals with a record in the Defense Enrollment and Eligibility Reporting System database." (Doc. No. 87 at 1 n.1.) He states that this number "is used for various DOD purposes, including access to systems, digital signatures, and identification on forms." (Id.)

[11]  The table of contents describes the exhibits as follows: DLA employee 1's 1/31/18 letter of reprimand, including supporting documentation (Doc. No. 87-4); DLA employee 1's 2/4/19 letter of suspension (Doc. No. 87-5); DLA employee 2's 11/29/17 letter of warning (Doc. No. 87-6); DLA employee 2's 8/6/18 notice of decision to remove (Doc. No. 87-7); DLA employee 3's 1/3/18 notice of proposed suspension (Doc. No. 87-8); DLA employee 3's 2/2/18 letter of suspension (Doc. No. 87-9); DLA employee 4's 1/8/15 letter of reprimand (Doc. No. 87-10); DLA employee 4's 2/11/15 letter of suspension (Doc. No. 87-11); DLA employee 4's 4/14/15 letter of suspension (Doc. No. 87-12); DLA employee 4's 7/1/15 notice of decision to remove (Doc. No. 87-13); DLA employee 5's 4/13/16 notice of proposed removal (Doc. No. 87-14); DLA employee 5's 8/17/16 notice of decision to remove (Doc. No. 87-15); DLA employee 6's 4/5/18 record of counseling (Doc. No. 87-16); DLA employee 6's 8/27/18 leave restriction (Doc.

employees' names are redacted and replaced with DLA employee 1, DLA employee 2, and so on. See generally (Doc. Nos. 87-4 through 87-45). Defendant seeks to protect the "identity of the ten non-party DLA employees who are comparators to [Plaintiff] and who were disciplined." (Doc. No. 87 at 4 ¶ 16.) Along with the unopposed motion for redactions, Defendant filed a concurred-in motion to seal the original documents (Doc. No. 88) and filed them provisionally under seal at Docket Number 89.[12] Defendant makes the same arguments in his responses to this

---

No. 87-17); DLA employee 6's 2/22/18 notice of proposed suspension (Doc. No. 87-18); DLA employee 6's 3/14/18 letter of suspension (Doc. No. 87-19); DLA employee 6's 1/8/19 notice of decision to remove (Doc. No. 87-20); DLA employee 7's 7/20/16 notice of proposed removal (Doc. No. 87-21); DLA employee 7's 10/7/16 letter of suspension (Doc. No. 87-22); DLA employee 8's 10/10/18 notice of proposed suspension (Doc. No. 87-23); DLA employee 8's 12/19/18 letter of suspension (Doc. No. 87-24); DLA employee 9's 8/30/18 letter of reprimand (Doc. No. 87-25); DLA employee 10's 11/20/18 notice of proposed removal (Doc. No. 87-26); DLA employee 10's 1/11/19 notice of decision to remove (Doc. No. 87-27); DLA employee 1's employee page (Doc. No. 87-28); DLA employee 2's SF-50 (Doc. No. 87-29); DLA employee 3's SF-50 (Doc. No. 87-30); DLA employee 3's employee page (Doc. No. 87-31); DLA employee 4's SF-50 (Doc. No. 87-32); DLA employee 4's employee page (Doc. No. 87-33); DLA employee 5's employee page (Doc. No. 87-34); DLA employee 6's SF-50 (Doc. No. 87-35); DLA employee 6's employee page (Doc. No. 87-36); DLA employee 7's SF-50 (Doc. No. 87-37); DLA employee 7's employee page (Doc. No. 87-38); DLA employee 8's employee page (Doc. No. 87-39); DLA employee 9's SF-50 (Doc. No. 87-40); DLA employee 9's employee page (Doc. No. 87-41); DLA employee 10's SF-50 (Doc. No. 87-42); DLA employee 10's employee page (Doc. No. 87-43); Declaration of Jerold Unruh, Deputy Inspector General (DIG), Investigations Division (ID), Office of the Inspector General, DLA, Department of Defense (Doc. No. 87-44); and Declaration of Daidra Williams, a Compliance and Complaint Director, DLA Equal Employment Opportunity Office (Doc. No. 87-45).

[12] In his motion to submit redacted documents, Defendant notes that:

> he is going to simultaneously file a motion to seal these same records because they will include the employees' identity. This is necessary so that when the DLA states DLA employee 5 is 64 years old, this Court and [Plaintiff]'s counsel can confirm in the sealed record that indeed the person identified as DLA employee 5 is 64 years old. The only difference between the attached record and the record that will be filed under seal is the DLA employee's name will appear in the sealed record. There will be no other differences between these two records.

(Doc. No. 87 at 4 n.2.)

Court's May 2, 2025 Order. See generally (Doc. Nos. 93–94). These exhibits are judicial records because they are filed in connection with Defendant's forthcoming motion for summary judgment. See Avandia, 924 F.3d at 672. Therefore, the common law presumption of public access applies to Docket Numbers 87-4 through 87-45. See id.

Upon review of Docket Numbers 87-4 through 87-4,5 and to balance the nonparties' interests and the common law presumption of public access, the Court finds that a redaction is appropriate for these documents. The names of nonparties can be considered personally identifying information. See Wartluft v. Milton Hershey School and School Trust, No. 16-cv-02145, 2020 WL 1124771, at *6 (M.D. Pa. Mar. 6, 2020) (stating that "redacting the names" of personnel "will provide sufficient protection of their interests without resorting to the wholesale sealing of these documents"). As properly noted by Defendant, under the Local Rules of this Court, personal data identifiers (another term for personal identifying information) must be redacted. See L.R. 5.2(d)(2). The required redactions include Social Security Numbers, names of minor children, dates of birth, and financial account numbers. See L.R. 5.2(d)(1)–(4).[13]

---

[13] Local Rule 5.2(d) provides as follows:

> (d) A filed document in a case (other than a social security case) shall not contain any of the personal data identifiers listed in this rule unless permitted by an order of the court or unless redacted in conformity with this rule. The personal data identifiers covered by this rule and the required redactions are as follows:
>
> 1. **Social Security Numbers**. If an individual's Social Security Number must be included in a document, only the last four digits of that number shall be used;
>
> 2. **Names of minor children**. If the involvement of a minor child must be mentioned, only that child's initials shall be used;
>
> 3. **Dates of birth.** If an individual's date of birth must be included, only the year shall be used;

The Court notes that the proposed redactions are minor, leaving the majority of the parties' arguments and materials open to the public. Further, "personal identifying information of non[]parties is precisely the kind of information that courts will protect." See McCowan v. City of Phila, No. 19-cv-02226, 2021 WL 3737204, at *3 (E.D. Pa. Aug. 24, 2021). The disclosure of investigations into the conduct of nonparties who have not consented to their personal information being made public would harm the reputation and privacy interests of those nonparties. See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd., No. 20-cv-04660, 2023 WL 1100995, at *5 (E.D. Pa. Jan. 30, 2023) (stating that "[a]lthough this matter may involve issues important to the public, those issues do not necessitate public disclosure of private financial details or nonparty identifying information unrelated [to the dispute]"). Defendant has identified adequate and legitimate public or private interests that warrant redaction, and Defendant has narrowly tailored his redactions.[14] Therefore, the Court

---

    4.    **Financial account numbers**. If financial account numbers must be included, only the last four digits shall be used.

See L.R. 5.2(d) (bolding in original).

[14] The Court notes that Avandia indicates that, if a district court finds that any documents merit continued sealing under the common law right of access, it "should also consider the parties' arguments regarding the First Amendment right of public access." See Avandia, 924 F.3d at 680. Defendant does not appear to address the First Amendment right of access in his motion or in his response to the Court's May 2, 2025 Order. See generally (Doc. Nos. 87, 93). In the absence of clear argument on this issue, the Court is not inclined to assess the applicability of the First Amendment right of access in this context. However, even if the Court assumes that the First Amendment right of access applies to Defendant's exhibits, it concludes that the burden to overcome that access is met here in light of the injury that would result from disclosure of the nonparties' personal information and the narrowly-tailored approach of redacting the nonparties' personal information from the exhibits instead of wholesale sealing. See Aetna, Inc. v. Mednax, Inc., No. 18-cv-02217, 2021 WL 5987205, at *6 (E.D. Pa. Dec. 17, 2021) (concluding that the defendant "made the 'much higher showing' required under the First Amendment for [sensitive commercial information] because the redactions [defendant] applied to protect its information

16

will grant Defendant's motion to submit redacted documents and grant Defendant's motion to seal the unredacted version of the documents, filed provisionally under seal at Docket Number 89.

Because these redactions relate to Defendant's forthcoming motion for summary judgment, the Court will grant Defendant's most recent motion for extension of time to file a motion for summary judgment (Doc. No. 90) and deny Defendant's prior motion for extension of time as moot (Doc. No. 85). Defendant shall have fourteen (14) days from the date of this Memorandum and Order to file a motion for summary judgment, statement of material facts, and supporting brief.

### IV.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to seal and submit documentation in camera, construed as a motion for leave to file exhibits under seal (Doc. No. 81), and direct Defendant to file Docket Number 82 on the public docket. The Court will grant Defendant's other pending motions. (Doc. Nos. 87–88, 90.) The Court will deny Defendant's first motion for extension of time to file a motion for summary judgment (Doc. No. 85) as moot. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

are narrowly tailored to serve [defendant's] interest in the secrecy of its competitive information, and essential to the preservation of that interest").